UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-1516 (VLB) |
| v. | : | |
| | : | |
| RORY DECORDOVA GAYLE, | : | January 29, 2014 |
| Defendant. | : | |


MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT [Dkt. 9]


I.      Introduction

The United States brings this denaturalization action against Defendant Rory Decordova Gayle, a naturalized U.S. citizen, pursuant to 8 U.S.C. § 1751(a), on two independent grounds: (1) the Defendant lacked good moral character during the statutory period, and, therefore, was ineligible to naturalize and did so unlawfully; and (2) the Defendant willfully misrepresented and concealed material facts about his criminal conduct during the naturalization process with Immigration and Naturalization Services ("INS").  For the following reasons, the Plaintiff's motion for summary judgment is GRANTED.

II.     Background

Mr. Gayle was born in Jamaica in 1969 and entered the United States on August 17, 1979 as a lawful permanent resident.  [Dkt. 9-1, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, p. 3; Dkt. 9-1, Immigration

1

Visa and Alien Registration, p. 1]. On January 8, 1999, Gayle, still then a lawful permanent resident of the United States, filed a Form N-400 Application for Naturalization ("N-400") with the INS. [Dkt. 9-11, Local Rule 56(a)1 Statement, ¶ 2; Dkt. 9-2, N-400 Application for Naturalization, p. 4]. Question 15a of Form N-400 asks: "Have you ever . . . knowingly committed any crime for which you have not been arrested?" Gayle answered "No" to that question. [Dkt. 9-11, ¶ 3; Dkt. 9-2, p. 3]. By signature dated January 4, 1999, Gayle signed his N-400 under penalty of perjury, thereby swearing or affirming that the contents of the application, including his response to Question 15a, were true and correct. [Dkt. 9-11, ¶ 4; Dkt. 9-2, p. 4]. On June 21, 1999, Gayle was interviewed under oath by INS District Adjudications Officer ("DAO") Peggy Keck. [Dkt. 9-11, ¶ 5; Dkt. 9-2, p. 4; Dkt. 9-3, Declaration of Peggy Keck, ¶ 5]. As a matter of practice, DAOs routinely ask the same questions of naturalization applicants, including orally reviewing questions and answers contained in the applicant's N-400. [Dkt. 9-11, ¶ 6; Dkt. 9-3, ¶ 7]. After asking Mr. Gayle selected questions from his N-400, DAO Keck recorded three corrections and advised him, as she did all applicants for naturalization, that if he swore that all of the information provided on the application was true and correct, including the corrections, that he should sign his full and complete name, attesting to the accuracy of the responses and information provided on the application. [Dkt. 9-11, ¶ 7; Dkt. 9-3, ¶ 9]. Gayle affirmed his understanding and signed the N-400 swearing for the second time that the content of the application, including his response to question 15a, was true and correct. [Dkt. 9-11, ¶ 7; Dkt. 9-2, p. 4; Dkt. 9-3. ¶ 9].

2

On June 30, 1999, Gayle's N-400 was approved, based on his sworn responses to the questions on the form, supporting documentation he provided, and his testimony at the interview.  [Dkt. 9-11, ¶ 8; Dkt. 9-2, p. 1; Dkt. 9-3, ¶¶ 9-10].  On August 6, 1999, Gayle appeared at the federal courthouse in Hartford, Connecticut, for his naturalization oath ceremony.  [Dkt. 9-11, ¶ 9; Dkt. 9-4, Form N-445 Notice of Naturalization Oath Ceremony].  Gayle presented INS authorities with his completed N-445 Form, including an answer to Question 3 which asked Gayle whether, since the date of his initial naturalization interview, "[h]ave you knowingly committed any crime or offense, [sic] for which you have not been arrested; or you have been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any la or ordinance, including traffic violations?"  [Dkt. 9-11, ¶ 10; Dkt. 9-4, p. 2].  Gayle answered "[n]o" to this question.  [Dkt. 9-11, ¶ 10; Dkt. 9-4, p. 2].  Because Gayle certified that there was no new information that would render him ineligible to naturalize, he was administered the oath of allegiance and was naturalized.  [Dkt. 9-11, ¶ 12; Dkt. 9-3, ¶ 11; Dkt. 9-5, Certificate of Naturalization No. 24401225].

On April 27, 2000, Gayle made a three page sworn statement to the Windsor Police Department in Connecticut, confessing to sexually abusing his minor niece on multiple occasions beginning two to three years prior.  [Dkt. 9-11, at ¶ 13; Dkt. 9-8, Police Confession, p. 1-3].  On October 30, 2000, Gayle appeared in Connecticut Superior Court and pleaded guilty to two counts of Sexual Assault in the First Degree against a minor, in violation of Conn. Gen. Stat. § 53a-70(a)(2), for crimes committed between November of 1996 and September 1999.  [Dkt. 9-11, ¶

3

14; Dkt. 9-6, Superior Court Information and Disposition, p. 1; Dkt. 9-7, Plea Colloquy Transcript, p. 2-3, 7-10].  After a thorough canvass, the court accepted Gayle's plea as knowing, intelligent, and voluntary.  [Dkt. 9-11, ¶ 15; Dkt. 9-7, 2-22].  Gayle was sentenced to twenty years' incarceration with fifteen years to serve and the remainder suspended, a ten-year period of probation, and lifetime registration as a sex offender.  [Dkt. 9-1, p. 5; Dkt. 9-6, p. 1, 3-4].  Gayle is currently incarcerated at the Osborne Correctional Institution located in Somers, Connecticut with a maximum release date of July 14, 2014.  [Dkt. 9-1, p. 6; Dkt. 9-9, Department of Correction Inmate Information, p. 1].

The INS claims that had the Defendant represented on his Form N-400, at his interview, or on his Form N-445 that he had committed this crime within the five-year statutory period in which good moral character must be established even though he had not been arrested, he would not have been permitted to naturalize. [Dkt. 9-11, ¶ 16].  Accordingly, the United States filed this civil action to revoke Gayle's naturalization pursuant to 8 U.S.C. § 1451(a) on October 24, 2012.  In response, Gayle's family members in Connecticut have communicated with government counsel, but the Defendant has failed to appear in this matter and has not filed any response to the government's petition.

III.    Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98,

4

106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citations omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, [the non-movant is] required to present admissible evidence in support of [its] allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the

5

record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

The government bears a tremendous burden in revoking citizenship because United States citizenship has been described as the "highest hope of civilized men," and "once [it][ has been conferred, it should not be taken away without the clearest sort of justification and proof." *Schneiderman v. United States*, 320 U.S. 118, 112 (1943). Generally, for the government to succeed in revoking an individual's citizenship, it "must prove its case by clear, unequivocal, and convincing evidence which does not leave the issue in doubt." *United States v. Sprogis*, 763 F.2d 115, 121 (2d Cir. 1985) (citing *Fedorenko v. United States*, 449 U.S. 490, 505 (1981)). However, "[e]ven in denaturalization cases, the facts of a case may be such that revocation of citizenship at the summary judgment stage is appropriate." *United States v. Wasylyk*, 162 F. Supp. 2d 86, 89 (N.D.N.Y. 2001).

Furthermore, a default judgment is valid and permissible in denaturalization actions. *See United States v. Karahalias*, 205 F.2d 331, 332 (2d Cir. 1953) ("The Supreme Court definitely decided in *Klapprot v. United States*, 335 U.S. 601, 69 S. Ct. 384, 93 L. Ed. 226, that a judgment by default was valid in a denaturalization action . . . ."). Therefore, it would be permissible for this Court to enter default judgment against the Defendant for his failure to contest the government's petition. However, given the tremendous impact that a ruling on this motion would have on the Defendant and upon review of more authorities questioning the propriety of default judgments in denaturalization hearings, the Court agrees with the government that a careful review of the evidence presented is warranted

6

in order to best serve the interests of justice.  *See Kungys v. United States*, 485 U.S. 759, 791-92) (Stevens, J., concurring in the judgment) (noting that since the effects of denaturalization proceedings may be graver than consequences that flow from some criminal convictions, "default judgments in denaturalization proceedings are intolerable.") (citations omitted).

## IV.      Discussion

In order to be eligible for naturalization, a person must satisfy three criteria: (1) have been lawfully admitted to the United States for permanent residence; (2) be a person of good moral character for at least five years before filing a naturalization application; and (3) have resided continuously and have been physically present in the United States for the required statutory period.  *See* 8 U.S.C. §§ 1427, 1429.  No alien has the right to naturalize "unless all statutory requirements are complied with."  *United States v. Ginsberg*, 243 U.S. 472, 475 (1917).  "[T]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship.  Failure to comply with any of these conditions renders the certificate of citizenship illegally procured, and naturalization that is unlawfully procured can be set aside."  *Fedorenko*, 449 U.S. at 506 (internal quotation marks and citations omitted); *see also United States v. Lemos*, No. 08-civ-11144(KMW), 2010 WL 1192095, at *5 (S.D.N.Y. March 26, 2010) ("Naturalization is illegally procured when the individual was statutorily ineligible for naturalization before it was granted.") (internal quotation marks and citations omitted)).

Within this context, the Immigration and Naturalization Act ("INA") permits the United States to

> institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation . . . .

8 U.S.C. § 1451(a).  The government argues that the Defendant procured his naturalization certificate both illegally and through concealment of material facts and willful misrepresentations.  Both of these arguments will be analyzed in turn.

### A.  Illegal Procurement

First, the government argues that the Defendant illegally procured his citizenship certificate because he lacked the good moral character required to naturalize.  The statute provides that no person shall be eligible for naturalization unless the person "during all the periods referred to in this subsection has been and still is a person of good moral character . . . ."  8 U.S.C. § 1427(a).  The statutory period for good moral character begins five years prior to the filing of the N-400 through the date the applicant takes the oath of allegiance and becomes a citizen.  8 U.S.C. § 1427(a).  Here, the Defendant was required to have good moral character from January 8, 1994 through August 6, 1999.  The government alleges, however, that during this time, the Defendant committed at least two acts that demonstrated his lack of good moral character: crimes of moral turpitude and/or acts that adversely reflected on his moral character.

**8**

### i.  Crimes of Moral Turpitude

In general, "any alien convicted of . . . a crime involving moral turpitude (other than a purely political offense)" is inadmissible.  8 U.S.C. § 1182(a)(2)(A)(i); *see also* 8 C.F.R. § 316.10(b)(2)(i) (when naturalizing, an applicant will be found to lack good moral character as required by the statute if he "[c]omitted one or more crimes involving moral turpitude, other than a purely political offense, for which the applicant was convicted . . . .").

The Second Circuit has held that "'[m]oral turpitude' is a term used to refer to offenses that are 'inherently base, vile, or depraved.'"  *Gill v. I.N.S.*, 420 F.3d 82, 89 (2d Cir. 2005) (quoting *Hamdan v. I.N.S.*, 98 F.3d 183, 186 (5th Cir. 1996)). "These acts are considered *malum in se*: that is, the acts are criminal because their nature is morally reprehensible and are not criminal simply by reason of statutory prohibition."  *Blake v. Carbone*, 489 F.3d 88, 103 (2d Cir. 2007).  Crimes involving moral turpitude "shock the public conscience" and are "contrary to the accepted rules of morality and the duties owed between persons or to society in general."  *Rodriquez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006).

Generally, in determining whether "a crime is a crime involving moral turpitude, [the Second Circuit] appl[ies] either a 'categorical' or a 'modified categorical' approach."  *Mendez v. Mukasey*, 547 F.3d 345, 348 (2d Cir. 2008). Under the categorical approach, the Court will only look 'to the minimum criminal conduct necessary to satisfy the essential elements of the crime, not the particular circumstances of the defendant's conduct."  *Id.* (citations omitted). "When the criminal statute at issue encompasses some classes of criminal acts

that fall within the federal definition of aggravated felony and some classes that do not fall within the definition, the statute is considered divisible." *Ambimbola v. Ashcroft*, 378 F.3d 173, 177 (2d Cir. 2004) (citations omitted). "If a statute is divisible a court, proceeding under the modified categorical approach, may refer to the record of conviction to determine whether a petitioner's conviction was under the branch of the statute that proscribes removable offenses." *Mendez*, 547 F.3d at 348. "The record of conviction includes, *inter alia*, the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy transcript." *Id.* (citations omitted).

The government argues that the Defendant's conviction categorically amounted to a crime involving moral turpitude. However, the Court need not decide whether to apply the categorical or modified categorical approach to the conviction in question because it is clear from the record of conviction that the Defendant pled guilty to Sexual Assault in the First Degree against a minor in violation of Conn. Gen. Stat. § 53-a-70(a)(2) for assaults committed between November 1996 and September 1999 against his minor niece. This is sufficient to find that the Defendant has committed a crime of moral turpitude.

The Connecticut statute to which the Defendant pled guilty defines sexual assault against a minor as:

> (a) A Person is guilty of sexual assault in the first degree when such person . . .
> (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . .

Conn Gen. Stat. § 53a-70(a)(2).  The record confirms that the Defendant was convicted under this provision.  In his plea colloquy, he admitted to sexually assaulting his minor niece between November 1996 and September 1999.  [Dkt. 9-7, p.2-3, 7-10].  Similarly, his sworn written confession to the Windsor Police Department contains detailed admissions about the sexual abuse against his niece.  [Dkt. 9-8, p. 1-3].  Finally, the Superior Court disposition indicates that the Defendant appeared before the court on October 30, 2000, and pled guilty to two counts of Sexual Assault in the First Degree in violation of Conn. Gen. Stat. § 53a-70(a)(2).  [Dkt. 9-6, p. 1].  Accordingly, the record makes clear that the Defendant's conviction was for acts constituting sexual assault on his minor niece.

Sexual abuse against a minor constitutes a crime of moral turpitude because of its inherently vile and depraved nature.  For example, the Board of Immigration Appeals ("BIA") routinely holds that sexual assault or abuse of a minor is a crime involving moral turpitude.  *See, e.g., Matter of Dingena*, 11 I. & N. Dec. 723 (BIA 1966) ("as long as sexual intercourse with a child constitutes a crime under the law of the state, we conclude on the basis of precedent administrative and judicial decisions, that moral turpitude is involved"); *In re: Romeo Arnulfo Larin Palacios A.K.A. Romeo Arnulfo Larin*, File: A90 491 130, 2004 WL 1059729 (BIA 2004) (unpublished opinion) (citing several BIA opinions where sexual assault on a minor has been found to constitute a crime of moral turpitude).

The Supreme Court has also stated that "sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002); *see also Judulang v.*

11

*Holder*, 132 S. Ct. 476, 482, 181 L. Ed. 2d 449 (2011) (noting that "first-degree sexual abuse of a child . . . is a 'crime involving moral turpitude . . . .'" (citing 8 U.S.C. § 1182(a)(2)(A)(i)(I))).  While it does not appear that the Second Circuit has specifically addressed the issue in this case, it has found generally that sexually abusing a minor constitutes a crime involving moral turpitude.  *See Marinelli v. Ryan*, 285 F.2d 474, 475-76 (2d Cir. 1961) ("The charge against a man of mature years of touching a boy under sixteen with sexual intent was a charge of crime involving 'moral turpitude' as the term is generally understood."); *cf. Ganzhi v. Holder*, 624 F.3d 23, 30 (2d Cir. 2010) ("Ganzhi's conviction for sexual misconduct was categorically one for sexual abuse of a minor, and Ganzhi is removable as an alien having been convicted of the latter aggravated felony.").  Moreover, several other circuits have made similar findings.  *See Mehboob v. Attorney General*, 549 F.3d 272, 277 (3d Cir. 2008) ("Strict liability morality offenses, like indecent assault under § 3126(a)(8), are crimes involving moral turpitude because of the community consensus that such offenses, which are enacted for the protection of the child, are inherently antisocial and depraved."); *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) (incest is a crime involving moral turpitude); *Castle v. INS*, 541 F.2d 1064, 1066 (4th Cir. 1976) ("Maryland statutory offense of carnal knowledge of a female between the ages of fourteen and sixteen years manifestly involves moral turpitude." (internal citations omitted)).

Given the current societal perspective on sexual abuse of minors, the Defendant's conviction under Conn. Gen. Stat. § 53a-70(a)(2) constitutes a crime involving moral turpitude.

12

The fact that the Defendant committed the alleged acts that constituted the basis for his conviction before his naturalization, but was not convicted of his crime until after obtaining citizenship, does not preclude his denaturalization.  In *United States v. Suarez*, the court held that an alien could be denaturalized for drug-related crimes as long as the offense was committed during the statutory period and a conviction resulted, regardless of when the conviction actually occurred.  *United States v. Suarez*, 664 F.3d 655, 658-60 (7th Cir. 2011).  The court relied on the plain language of 8 U.S.C. § 1101(f)(3).  *Id.; see also United States v. Ekpin*, 214 F. Supp. 2d 707, 714 (S.D. Tex. 2002) (concluding that 8 U.S.C. § 1101(f)(3) and 8 C.F.R. § 318.10(b)(2)(i) only require the commission of a crime of moral turpitude, not the conviction for it, to take place during the statutory period).  *But see United States v. Mwalumba*, 688 F. Supp. 2d 565, 570 (N.D. Tex. 2010) ("The statutory and regulatory provisions that are specific to crimes of moral turpitude require that both the commission of and the conviction for a crime of moral turpitude take place before naturalization occurs and citizenship is granted.").

This Court agrees, in what appears to be an issue of first impression in this Circuit, with the Seventh Circuit's reading of the plain and unambiguous language of the statute.  Nothing in the statutory language requires the conviction of the offense to occur before the naturalization.  Section 1101(f)(3) provides that

> No person shall be regarded as, or found to be a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . .

**13**

> **(3) a member of one or more of the classes of persons, whether inadmissible or not, described in . . . subparagraphs (A) and (B) of section 1182(a)(2) of this title and subparagraph (C) thereof of such section (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or *of which he admits the commission, was committed during such period*;**

8 U.S.C. § 1101(f)(3) (emphasis added).  Section 1182(a)(2)(A)(i) lists the classes

of aliens ineligible for admission:

> **In general**
>
> **Except as provided in clause (ii), any alien convicted of, *or who admits having committed, or who admits committing acts which constitute the essential elements of* –**
>
> **(I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . .**

8 U.S.C. § 1182(a)(2)(A)(i) (emphasis added).  The Defendant is a member of the

class described in section 1182(a)(2)(A) because he is an individual who both

admitted and who was convicted of a crime of moral turpitude.  Furthermore, he

falls into the purview of section 1101(f)(3) as a person who is statutorily barred

from possessing the requisite good moral character because "the offense

described therein" was "committed during such period" when his good character

must have been established.  There is no limitation in the statute that requires the

conviction to occur during the good-moral-character statutory period.  Instead,

section 1101(f)(3) only requires that the "offense" be committed during that time.

The introductory paragraph in section 1182(a)(2)(A)(i) merely lists the proof that is

necessary to fall into the category, namely that the person must be convicted or

**14**

admit committing the crime or admit committing the elements necessary to constitute the crime.  The level of proof is not explicitly required to occur within the statutory period as that is wholly separate from the commission of the offense.  Remembering that the Supreme Court requires that the proof for denaturalization be clear, unequivocal, and convincing, the proof clause merely assures that bar is not reduced.  *See Fedorenko*, 449 U.S. at 505.  Therefore the proper reading of these statutes is that if the offense was committed during the statutory period and it resulted, at some future point, in a criminal conviction or a type of admission described in the statute, the applicant is statutorily barred from possessing the requisite moral character.  We agree with the Seventh Circuit that reading this statute any other way would "lead to the absurd result that . . . an applicant who evaded prosecution or refused during the statutory period to admit committing a crime would have an advantage over an applicant who was convicted or who was truthful during that time period."  *Suarez*, 664 F.3d at 660.

Here, the Defendant filed his N-400 on January 8, 1999, and naturalized on August 6, 1999.  The requisite statutory period for the demonstration of good moral character ran from January 8, 1994 to August 6, 1999.  His conviction occurred on October 30, 2000, after he naturalized, but the actions that led to the conviction, as admitted by the Defendant, occurred between November 1996 and September 1999.  The fact that the offense occurred within the statutory period is sufficient to permit his denaturalization under section 1101(f)(3).

15

### ii.  Acts Adversely Reflecting on Moral Character

Even though section 1101(f)(3) provides sufficient grounds to warrant denaturalization, the catch-all provision found in section 1101(f) states that "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."  Federal regulations, which have been deemed by courts to receive *Chevron* deference, set forth guidance for interpreting this section.  *See United States v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005) ("This regulation is entitled to deference."); *Suarez*, 664 F.3d at 660 ("Suarez does not dispute the district court's finding or the government's argument on appeal that section 316.10(b) is entitled to *Chevron* deference").  In accordance with section 1101(f) the INS "shall evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence."  8 C.F.R. § 316.10(a)(2).  "Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts . . . ."  8 C.F.R. § 316.10(b)(3).  The term "unlawful acts" within the regulation encompasses bad acts that led to a post-naturalization conviction.  *See United States v. Jean-Baptiste*, 395 F.3d at 1194 ("we affirm the district court's well-reasoned determination that, because he committed a drug offense as established by his later conviction, Jean-Baptiste was precluded under 8 U.S.C. § 1101(f)(8), as

**16**

elaborated in 8 C.F.R. § 316.10(b)(iii), from establishing good moral character, and was therefore barred from acquiring citizenship).  As discussed above, sexual assault on a minor has been unanimously held to shock the conscious due to its inherent vileness and depravity.  The Defendant's conduct ultimately resulted in his post-naturalization conviction for sexual assault in the first degree on a minor, thus proving the unlawful nature of his acts.  So, even if the Defendant's post-naturalization conviction precludes revocation of his citizenship under section 1101(f)(3), it certainly warrants a revocation under the catch-all provision found in 1101(f).  *See United States v. Salama*, 891 F. Supp. 2d. 1132, 1141 (E.D. Cal. 2012) (applying catch-all provision to post-naturalization insurance fraud conviction based on pre-naturalization conduct); *Mwalumba*, 688 F. Supp. 2d at 570 ("If a person commits a crime of moral turpitude during the statutory good-moral-character period but is not convicted of that crime until after gaining citizenship, he or she is subject to denaturalization under the 'catch-all' provisions of 8 U.S.C. § 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii).").

### B. Concealment and Willful Misrepresentation

The government argues that a second and independent ground for the revocation of the Defendant's citizenship is based on his concealment of material facts and willful misrepresentations during the naturalization process.

A court may revoke a person's naturalization if the naturalization was "procured by concealment of a material fact or by willful misrepresentation."  8 U.S.C. § 1541(a).  The Supreme Court has noted that this provision "plainly contains four independent requirements: the naturalized citizen must have

**17**

misrepresented or concealed some fact, the misrepresentation or concealment must have been willful, the fact must have been material, and the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." *Kungys v. United States*, 485 U.S. 759, 767 (1988); *see also Monter v. Gonzales*, 430 F.3d 546, 554 (2d Cir. 2005) (stating the same).

First, the government must prove that the Defendant misrepresented or concealed some fact during the naturalization process.  The evidence shows that between November 1996 and September 1999, the Defendant admitted to repeatedly sexually assaulting his minor niece.  Even though he was not convicted of first degree sexual assault on a minor until after his naturalization, some of the acts which comprised the offense occurred before January 4, 1999, the date on which he submitted his N-400.  [Dkt. 9-2, p. 4].  Accordingly, his negative response to Part 7, Question 15a of his N-400, which asked "have you ever knowingly committed any crime for which you have not been arrested," was a perjurious misrepresentation and concealment of the criminal acts then occurring.  The Defendant made similar misrepresentations at the conclusion of his naturalization interview on June 21, 1999 when he was interviewed by Officer Keck about the contents of his application.  Officer Keck affirmed under oath that it was her standard practice to discuss all of the questions on the N-400 during an interview, and she did in fact discuss this particular question with the Defendant. [Dkt. 9-3, ¶ 8].  At the conclusion of this interview, the Defendant acknowledged that he affirmed all of his answers on his application.  [*Id.* at ¶ 9].

18

Finally, the Defendant misrepresented this fact again on his N-445 application which was executed on the date of his naturalization.  [Dkt. 9-4, p. 2].  Question 3 on the N-445 asked the Defendant whether, since the date of his initial naturalization interview, he had "knowingly committed any crime or offense,[sic] for which you have not been arrested; or you have been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations."  [*Id.*].  Just as he had done before, the Defendant affirmed under penalty of perjury that he had not.  [*Id.*].

The Second Circuit has held in nearly identical cases that this evidence is sufficient for the government to prove misrepresentation or concealment.  In *United States v. Oddo*, the court affirmed the revocation of naturalization due to the defendant's misrepresentation and concealment of his prior arrest record during the naturalization process.  *United States v. Oddo*, 314 F.2d 115, 117 (2d Cir. 1963).  The court held there that the government's evidence that the defendant checked "no" on several forms to questions asking whether he had prior arrests during the statutory period and the testimony that it was standard procedure during the naturalization interview to require the applicants to affirm the accuracy of those answers constituted sufficient evidence of misrepresentation and concealment.  *Id.*; *see also United States v. Rossi*, 319 F.2d 701, 702 (2d Cir. 1963) (holding the same); *In re Yao Quinn Lee*, 480 F.2d 673, 676-77 (2d Cir. 1973) (affirming the denial of a naturalization petition when the defendant verbally lied during the examination interview).

**19**

The questions asked of the Defendant during the application process, including the written applications and the verbal affirmations, constitute sufficient evidence to show that the Defendant misrepresented and concealed the sexual abuse of his minor niece.

Next, the government must prove that the Defendant's misrepresentations or concealments were willful.  "[An] act is done willfully if [it is] done intentionally and deliberately and if it is not the result of innocent mistake, negligence, or inadvertence."  *Emokah v. Mukasey*, 523 F.3d 110, 116-17 (2d Cir. 2008) (citations omitted).  In *Emokah v. Mukasey*, the court found that the defendant's admission that using the incorrect name on her visa application was a deliberate act constituted a willful misrepresentation.  *Id.*  It is clear from the jurisprudence in this Circuit that applicants are assumed to understand the questions being asked of them on naturalization forms and reply accordingly.  *See Rossi*, 319 F.2d at 702-03 (finding unavailing defendant's claim that the government failed to meet its burden because he did not possess sufficient knowledge of English to understand the naturalization questions when the government offered evidence showing he was directly asked the question in issue and never claimed he did not understand).  Here, the questions were perfectly clear, and there is no evidence to show that the Defendant did not understand the questions on the forms or those asked during the interview.  Indeed, given that the Defendant's native language can be presumed to be English due to his Jamaican heritage, the presumption that he understood is even stronger.  Whether a misstatement is innocent or willful may depend on the significance of the underlying circumstance, that is

**20**

whether it is a minor detail or an important fact.  Certainly the sexual assault of a relative's minor child is not a minor detail, but rather a momentous event and an important fact which one would be unlikely to forget or believe was proper, if not illegal.  Finally, there is no evidence on the record that the Defendant did not know that sexually assaulting a minor child was a crime.  Based on the record in this case, this Court finds that the Defendant's misrepresentations were willful.

Third, the government must prove that the misrepresentations and concealments were material.  The general rule is that a concealment or misrepresentation is material if it "has a tendency to influence or was capable of influencing, the decision of the decision making body to which it was addressed." *Kungys*, 485 U.S. 759 at 770.  This means that "a fact concealed by an alien during the immigration and naturalization process is material if its admission would have occasioned either (1) the denial of naturalization or (2) an investigation potentially leading to the discovery of other facts warranting denial of citizenship."  *United States v. Sokolov*, 814 F.2d 864, 873 (2d Cir. 1987).

Officer Keck has affirmed that "[h]ad Mr. Gayle represented on his Form N-400 application while under oath during his Form N-400 application interview, or on his Form N-445, Notice of Oath Ceremony, that he had committed sexual assault against a minor within the five-year statutory period where good moral character must be established, his Form N-400 application would definitely have been denied."  [Dkt. 9-3, ¶ 11].  Accordingly, his misrepresentation and concealment about his criminal activities had more than just a "natural tendency to produce the conclusion" that he was qualified to naturalize when he was not, they actually

**21**

caused his application to be approved.  *Kungys*, 485 U.S. at 771-72.  There is no doubt that the Defendant's misrepresentations and concealments were material.

Finally, the government must prove that the Defendant procured his citizenship as a result of his misrepresentations or concealments.  "In order to satisfy this fourth prong of the test, the government need not establish that 'but for' the misrepresentation, the petitioner would not have achieved naturalization. . . . Instead, the *Kungys* Court concluded that the government's showing of 'materiality' creates a presumption that the petitioner was disqualified from naturalization."  *Monter*, 430 F.3d at 554 (citations omitted).  "Thus, for the fourth *Kungys* requirement, once the government establishes 'materiality,' a presumption arises against—and the burden of persuasion shifts to—the subject of the denaturalization proceeding regarding whether he or she is statutorily 'disqualified.' . . . That person may refute the presumption by establishing that he or she did in fact meet the statutory qualification that the misrepresentation had a tendency to influence."  *Id.* at 554-55 (citations omitted).  Here, the statutory qualification is good moral character.  The Defendant has not responded to the government's motion, and, therefore, he has not carried his burden of persuasion that he did in fact have the good moral character despite having committed crimes of moral turpitude and that he would have been granted citizenship if he had answered the questions honestly.  Accordingly, the revocation of his citizenship is also warranted on the grounds that it was procured through the Defendant's concealment of a material fact or willful misrepresentations.

22

**V.      Conclusion**

For the foregoing reasons, the government's [Dkt. 9] Motion for Summary Judgment is GRANTED.  The Court orders that the Defendant's citizenship be revoked.  The Defendant is further enjoined from claiming any rights, privileges or advantages under any document evidencing United States citizenship obtained as a result of his naturalization.  Finally, the Court cancels the Defendant's Certificate of Naturalization numbered 24401225, and he is ordered to surrender and deliver his Certificate and other indicia of his United States citizenship, including his United States passport, to the Secretary of Homeland Security or her designated representative within ten days of this order.

**IT IS SO ORDERED.**


_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**


**Dated at Hartford, Connecticut: January 29, 2014**